## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| **OWNERS INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **TAMARA NICOLE DOCK, as Surviving** | ) | **CIVIL ACTION NO.** |
| **Parent of Albert Wilson Dock and as** | ) | **4:21-cv-00266-RSB-CLR** |
| **Administrator of the ESTATE OF** | ) | |
| **ALBERT WILSON DOCK; and** | ) | |
| **ANTOINE OMAR MCLENDON,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT TAMARA NICOLE DOCK'S MOTION TO DISMISS

COMES NOW Plaintiff Owners Insurance Company ("Owners") and files its response in opposition to the Motion to Dismiss Filed By Defendant Tamara Nicole Dock and Incorporated Memorandum of Law (Doc. # 9), respectfully showing the Court as follows:

## INTRODUCTION

Defendant Tamara Dock's Motion to Dismiss is disingenuous, at best, and should be denied.  Ms. Dock has filed two underlying lawsuits against Antoine McLendon, Owners' insured, stemming from the same car crash. Owners currently

46553650 v1

is providing a defense in both cases (under reservation of rights) at least until this Court declares it owes no further coverage because (1) the policy limits have been exhausted and/or (2) McLendon failed to appear for trial. Owners seeks a judicial declaration as authorized under the Declaratory Judgment Act, 28 U.S.C. § 2201. Ms. Dock is named as a defendant because she is the plaintiff (and a current judgment creditor) in the underlying lawsuits. Declaratory judgment actions in such situations are extremely common and have long been held to present a justiciable Article III case or controversy. Ms. Dock's argument that Owners' complaint should be dismissed for lack of subject matter jurisdiction is a red herring and should be denied.

Ms. Dock's other argument – that Owners waived its chance to enforce its rights under the Policy – is premised on an assumption that Owners did not reserve its rights until after trial, which is incorrect. In any event, waiver is a mixed question of fact and law that simply is not appropriate for a threshold motion to dismiss under Fed. R. Civ. P. 12(b)(6).

## SUMMARY OF ALLEGATIONS

Owners issued to Antoine McLendon an automobile insurance policy, number 51-907-753-00 (the "Policy"), effective from 08/10/2018 to 08/10/2019. (Complaint, ¶ 10, Ex. A thereto (Doc. # 1-1)). The Policy provided auto liability coverage for bodily injury arising from use of an automobile, subject to payment of

the limits of the policy.  (Complaint, ¶ 19, Ex. A thereto (Doc. # 1-1)).  The Policy contains a bodily injury, per occurrence limit of $50,000.  (Complaint, ¶ 20, Ex. A thereto (Doc. # 1-1)).

McLendon later crashed his car on January 26, 2019, while driving intoxicated at a high rate of speed. The crash caused injuries to claimants Deven Merchant and David Jackson and the death of Albert Dock.  (Complaint, ¶ 11).  Owners received a policy limits timed-demand from claimant Deven Merchant and on March 21, 2019 paid its policy limits to settle that demand on behalf of McLendon, thereby exhausting McLendon's $50,000 policy limits. (Complaint, ¶ 12).  Tamara Dock never made a settlement demand before Owners paid its policy limits.

Instead, Tamara Dock filed a wrongful death lawsuit against McLendon asserting claims of negligence and wrongful death arising from the same January 26, 2019 crash, which suit is styled: *Tamara Nicole Dock, as Surviving Parent of Albert Wilson Dock v. Antoine Omar McLendon*, State Court of Liberty County, Georgia, Case No. STSV2019000019 (the "Wrongful Death Lawsuit"). (Complaint, ¶ 13). Although Owners had exhausted the policy limits, Owners continued to provide McLendon a defense in the Wrongful Death Lawsuit. (Complaint, ¶ 14).  McLendon then failed to appear for trial and did not participate and assist in the defense of the case at trial. A jury verdict was entered against McLendon in the amount of $66,500,000 on July 27, 2021.  (Complaint, ¶¶ 15-16, 23).  McLendon's lack of

cooperation was a failure of a condition precedent under the Policy, resulting in a forfeiture of his coverage. (*Id*.) Owners is continuing to provide a defense for McLendon (under a supplemental reservation of rights) for purposes of filing a Motion for New trial and potential appeal.

Only weeks after the $66.5 million jury verdict, Tamara Dock filed a second lawsuit against McLendon on August 30, 2021, over the exact same crash (the "Estate Lawsuit" and together with the Wrongful Death Lawsuit, the "Underlying Lawsuits"), naming McLendon and Sepid, LLC, d/b/a Gata's Sports Bar & Grill, and seeking exemplary damages of $66,500,000 (among other things). (Complaint, ¶ 17). Pursuant to McLendon's request, Owners will provide him a defense for the Estate Lawsuit (under reservation of rights). McLendon's answer is due on November 8, 2021.

The policy limits having been exhausted, and McLendon having forfeited any remaining coverage in any event, Owners filed this declaratory judgment action on September 22 (three weeks after the Estate Lawsuit was filed), seeking a declaration of its rights and duties under the terms and conditions of the Policy, including that Owners has no duty of payment in respect to either of the Underlying Lawsuits.

## ARGUMENT AND CITATION TO AUTHORITY

### A.    Case or Controversy

Ms. Dock cites Article III of the U.S. Constitution, 28 U.S.C. § 2201 and case law for the general premise that a "case or controversy" is required for the Court's subject matter jurisdiction.  (Motion, pp. 4-5).  Ms. Dock argues that there is no "case or controversy" because Owners takes the position that its policy limits were exhausted in 2019 when it paid its limits to Deven Merchant, as follows:

> Here, Owners has taken a firm stand that its policy limits were exhausted in April of 2019, when it paid its limits to only one passenger in the vehicle.  It pleads this.  (Complaint, para. 12).  Even after exhaustion payment of the limits, Owners continued to provide a defense to McLendon.  By its own admission, Owners needs no ruling by this Court to confirm its position that limits have been exhausted. Owners seeks from this Court is [sic] a blessing for a position it took two years ago.

(Motion, pp. 5-6).  The "firm stand" or "position" presumably refers either to the act of paying the limits or the April 2019 letter to Ms. Dock's counsel, which was attached to the Motion.  Ms. Dock does not explain why Owners' position, that in fact the policy limits were exhausted, prevents Owners from seeking declaratory relief. Nor does she show how the general "case or controversy" cases she cites apply here to these facts, so the basis for her argument is unclear. What is clear and completely ignored by Ms. Dock, however, is that there are legitimate coverage disputes and Owners is entitled to the declaratory relief that it seeks which includes

a declaration of its current rights and duties under the Policy with respect to the Underlying Lawsuits and judgment.  Ms. Dock does not even address the crux of the declaratory relief sought.  In other words, the "controversy" is not merely whether Owners paid its policy limits, but entails whether Owners has any further duty to defend or indemnify under the Policy.

As an initial matter, Ms. Dock's theory fails out of the gate because Owners is continuing to defend it's insured in the Underlying Lawsuits, which is part of the declaratory relief it seeks.  Federal Courts consistently have held that "an actual controversy exists in the context of insurance disputes where the insurer is currently defending an underlying case but disputes its obligation to do so."  Auto-Owners Ins. Co. v. Hickory Springs Estates Homeowners Ass'n, Inc., 2009 WL 1658507 (M.D. Ga. 2009); Auto-Owners Ins. Co. v. Deerlake Homeowners Ass'n, Inc., 2012 WL 1038748, *3 (N.D. Ga. 2012) ("[c]ourts have recognized a controversy exists regarding the duty to defend when the insured seeks a defense from an insurance company, but the insurance company denies that it is obligated.").

The fact that Owners is defending the Underlying Lawsuits alone dispels Ms. Dock's Article III argument, but her theory is legally flawed even if Owners was not faced with the prospect of continued defense and this is demonstrated by the cases she cites, including American Ins. Co. v. Evercare Co., 699 F. Supp. 2d 1355 (N.D. Ga. 2010), aff'd 430 Fed. Appx. 795 (11th Cir. 2011).  In American Ins. Co., the

insured, Evercare, argued that when the insurer plaintiffs denied coverage, the rights of the parties accrued and there was no longer a live controversy between them.  The court disagreed, explaining that:

> Plaintiffs do not . . . seek a declaration merely with respect to the validity of its 2008 denial of coverage. A declaratory judgment would equally address Evercare's [the insured] ongoing demand that Plaintiffs perform under the policies by indemnifying Evercare for its dispute with 3M. Only were Evercare to surrender its claim for indemnification would the controversy become unjusticiable as 'past conduct.'

699 F. Supp. 2d at 1359 ("the 'possibility or conjecture of a future lawsuit' created by Evercare's refusal is sufficient to establish a controversy or a threatened injury").

As the Eleventh Circuit held affirming American Ins. Co., the insurer was not required to wait to be sued.  430 Fed. App. at 798-99.  "[The insurer] denied coverage and [the insured] demanded it.  That is a controversy and thus there is jurisdiction."

Id.

Here, Owners is continuing to provide a defense at its insured's request even though it disputes an obligation to do so, and this case is not even a close call as discussed above.  That said, the controversy here is also bolstered by the separate issue of any duty to indemnify, which alone was sufficient in American Ins. Co. even though the insurer previously denied coverage and the insured argued that the rights of the parties accrued and there was no longer a live controversy.  In fact, Ms. Dock's counsel has repeatedly argued – and indeed argues in this Motion – that Owners still

has ongoing duties under the Policy.[1] See, e.g., Motion, pp. 7-8 ("Owners has waived its ability to now contest its duty to defend, or any other duties it owed McLendon, as an insured").  As the Eleventh Circuit explained in <u>American Ins. Co.</u>, "[t]hat is a controversy and thus there is jurisdiction."

Other cases similarly find a controversy exists under far less compelling circumstances.  For example, in <u>Utica Mut. Ins. Co. v. Dean & Moore Ins., Inc.</u>, 2011 U.S. Dist. LEXIS 166145 (N.D. Ga. March 29, 2011), Judge Horace T. Ward of the Northern District of Georgia distinguished cases applying Georgia's declaratory judgment law:

> The Georgia cases cited were decided under Georgia declaratory judgment law, and federal law is to the contrary. <u>See</u> <u>Universal Underwriters Ins. Co.</u>, 990 F.2d 598. In <u>Universal Underwriters Ins. Co.</u>, the Eleventh Circuit reversed the district court and held that the insurer should have been granted summary judgment on its declaratory judgment action, which raised issues of duty to defend and indemnify, ***even though the case against the insured had settled and the insurer had not defended the insured***. ***That case illustrates that the duty to defend does not become "moot" when the insurer declines to defend, or even when the underlying case settles. Federal courts are not barred from hearing declaratory judgment actions on coverage merely because the insurer declined to provide the insured with a***

---

[1] Ms. Dock's counsel argues that Owners also has other ongoing policy duties, such as payment of an appeal bond premium. His goal (assuming he can obtain from McLendon an assignment of his insurance rights) is to bring a claim for bad faith breach of contract seeking payment of the full $66.5 million jury verdict against McLendon even though McLendon only purchased a $50,000 policy that long ago was exhausted.

> ***defense***. The court finds that the issue of whether Utica has a duty to defend its insured is not moot.

See also <u>Auto-Owners Ins. Co. v. Minor</u>, 2012 U.S. Dist. LEXIS 203987 (N.D. Ga. Feb. 10, 2012).  The mere fact that an insurer takes a position on coverage does not render the declaratory relief moot.  Again, the controversy in this case is even more apparent because Owners is also continuing to provide a defense for its insured, and there can be no question that the coverage issues are not rendered "moot" in this case.

Finally, it is worth noting that Ms. Dock's argument is premised on the policy limits being exhausted, but Ms. Dock completely ignores that McLendon's failure to cooperate is an additional basis for declaratory relief.  Ms. Dock's argument does not even apply to this separate basis for declaratory judgment, which alone presents a controversy.[2]

---

[2] Ms. Dock's argument that there is no controversy is also particularly disingenuous considering the recently filed Estate Lawsuit and her accusations that Owners waived policy defenses and is subject to a "bad faith" claim in connection with the first Wrongful Death Lawsuit.  Aside from the fact that the disagreement over policy obligations alone presents a "controversy" as discussed above, the filing of the Estate Lawsuit presents additional basis and need for declaratory relief.   It is disingenuous for Ms. Dock to argue otherwise while also arguing that Owners' defense of the first Wrongful Death Action amounted to waiver of its ability to contest its duties under the Policy (with which Owners vehemently disagrees).

**B.      Owners has not waived Policy defenses, and in any event Ms. Dock's waiver argument is not grounds for dismissal under Fed. R. Civ. P. 12(b)(6).**

Ms. Dock argues that Owners waived its ability to contest its obligations under the Policy by defending McLendon in the Wrongful Death Lawsuit without reserving its rights until after trial.  This is simply incorrect, and Ms. Dock's argument fails for at least three reasons.

First, Ms. Dock's waiver argument is premised entirely on her theory that Owners did not reserve its rights until after trial. This is false. Owners was defending McLendon under a reservation of rights. Ms. Dock takes a single allegation in the Complaint out of context, which stated that "Owners has reserved its right to assert certain additional defenses to coverage based upon facts that came to light in the trial of the Wrongful Death Lawsuit." (Complaint, ¶ 22).  Owners did not allege that this was the first or only reservation of rights, but Ms. Dock's attorney leaps to that conclusion.  To clarify, this was not the first reservation of rights and Owners was indeed defending McLendon pursuant to a reservation of rights. That said, as this argument is based entirely on Ms. Dock's erroneous assumption of fact, the Motion should be denied.[3]

_____

[3] The Complaint states a claim and is sufficient to withstand dismissal under Fed. R. Civ. P. 12(b)(6), as discussed below. In the alternative, Owners seeks leave

Moreover, an argument of waiver is not grounds for dismissal; it merely is an affirmative defense. As the Eleventh Circuit Court of Appeals explained in Twin City Fire Ins. Co v. Hartman Simons and Wood, LLP:

> Waiver is listed as an affirmative defense under Rule 8 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 8(c)(1). A plaintiff is "not required to negate an affirmative defense in [its] complaint." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir.2004) (quoting Tregenza v. Great American Commc'ns Co., 12 F.3d 717, 718 (7th Cir.1993)). Thus, "[g]enerally, the existence of an affirmative defense will not support a motion to dismiss." Quiller v. Barclays American/Credit, Inc., 727 F.2d 1067, 1069 (11th Cir.1984), en banc reh'g, 764 F.2d 1400 (11th Cir.1985) (per curiam) (reinstating panel opinion).

Twin City Fire Ins. Co v. Hartman Simons and Wood, LLP, 609 Fed. Appx. 972, 976 (11th Cir. 2015).  While dismissal may be possible where the defense "clearly appears on the face of the complaint," that is not the case here (as discussed above) and it cannot be based on such an inference, as "a court must construe a complaint in the light most favorable to the plaintiff, not the other way around." Id., 609 Fed. Appx. at 977 ("Twin City was under no obligation to anticipate the affirmative defense of waiver and to include factual allegations responsive to that defense. The complaint's silence regarding what might or might not have happened between 2010 and 2013 did not give the district court license to assume that Twin City had failed

---

to amend its complaint to expressly allege that it was defending McLendon under a reservation of rights.

to take certain actions during that period."). There also is a question of whether Ms. Dock has standing to argue "waiver" under the Policy since she was not the policyholder. See Capitol Indem. Corp. v. Fraley, 266 Ga. App. 561 (2004) (third-party claimant lacks standing to assert the defense of waiver or estoppel against insurer for failing to provide timely notice of reservation of rights). Thus, at least at this time, Ms. Dock's purported waiver argument is not a basis for dismissal under Fed. R. Civ. P. 12(b)(6).

To the extent Ms. Dock argues that Owners should have sought declaratory relief sooner, an insurer is not subject to a deadline to file a declaratory judgment action regarding coverage unless the insured objects to the defense under a reservation of rights.  In Sims v. First Acceptance Ins. Co. of Ga., Inc., for example, the insurer defended the underlying lawsuit for more than two years before filing the declaratory judgment action, and the Georgia Court of Appeals rejected the argument that the insurer could not challenge coverage because it failed to file its declaratory judgment action in a timely manner.  The Court distinguished Richmond v. Ga. Farm Bureau Mut. Ins. Co., 140 Ga. App. 215 (1976), which set forth a procedure for the insurer to seek immediate declaratory relief where the insured refused to consent to a defense under a reservation of rights.  As the insured did not object to the defense under reservation of rights in Sims, the Court held as follows:

> [T]he amount of time that had passed and the stage of litigation reached
> in the underlying suit were not relevant to First Acceptance's ability to

challenge policy coverage, because First Acceptance "was not required to file a declaratory judgment action within any particular time period, or at all, to avoid estoppel."

Sims, 322 Ga. App. at 363 (quoting Boatright v. Old Dominion Ins. Co., 304 Ga. App. 119, 124 (2010)).  As in Sims, McLendon did not object to the defense under reservation of rights.  Thus, Owners "was not required to file a declaratory judgment action within any particular time period, or at all, to avoid estoppel."  Id.

Respectfully submitted this 29th day of October, 2021.


/s/ Bret A. Beldt
Bret A. Beldt
Georgia Bar No. 940327
bbeldt@burr.com
**BURR & FORMAN LLP**
171 17th Street NW, Suite 1100
Atlanta, Georgia 30363
Telephone: 404-815-3000
Facsimile: 404-817-3244

Forrest S. Latta
Alabama Bar No. LATTF0526
forrest.latta@burr.com
**BURR & FORMAN LLP**
P.O. Box 2287
Mobile, Alabama 36652-2287
Telephone: (251) 344-5151
Facsimile: (251) 344-9696
Motion for Admission *Pro Hac Vice*
to be filed

*Attorneys for Owners Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of October, 2021, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT TAMARA NICOLE DOCK'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Brent J. Savage
Kathryn Hughes Pinckney
James H. Wilson
SAVAGE & TURNER, P.C.
Post Office Box 10600
Savannah Georgia 31412

*/s/ Bret A. Beldt*
Bret A. Beldt
Georgia Bar No. 940327
bbeldt@burr.com

**BURR & FORMAN LLP**
171 17th Street NW, Suite 1100
Atlanta, Georgia 30363
Telephone: 404-815-3000
Facsimile: 404-817-3244